**FOLEY & LARDNER LLP**
ATTORNEYS AT LAW
402 W. BROADWAY, SUITE 2100
SAN DIEGO, CA 92101-3542
TELEPHONE: 619.234.6655
FACSIMILE: 619.234.3510

VICTOR A. VILAPLANA (STATE BAR NO. 58535)
VAVILAPLANA@FOLEY.COM
MATTHEW J. RIOPELLE (STATE BAR NO. 260176)
MRIOPELLE@FOLEY.COM

[PROPOSED] ATTORNEYS FOR DEBTOR
SR REAL ESTATE HOLDINGS, LLC

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE:<br><br>SR REAL ESTATE HOLDINGS, LLC<br><br><br><br>DEBTOR | CASE NO. 13-<br><br>**DECLARATION OF NORMAN I. ADAMS IN SUPPORT OF VOLUNTARY PETITION** |

I, Norman I. Adams, hereby declare as follows:

1. I am the Manager of SR Real Estate Holdings, LLC, debtor and debtor-in-possession (the "Debtor"), in the above captioned Chapter 11 case. I am also the proposed Responsible Individual pursuant to Local Rule 4002-1 of the Local Rules for the United States Bankruptcy Court for the Northern District of California. I make this declaration in support of the Debtor's voluntary petition.

2. I have personal knowledge of the facts stated herein and could and would testify competently thereto if called as a witness.

3. The Debtor is the owner of 14 parcels of real property straddling Santa Cruz and Santa Clara counties (the "Property"). The Property consists of approximately 6,400 acres of land.

4. This is the third bankruptcy filed with respect to the Property.[1] The prior owner of the Property, Sargent Ranch, LLC ("SR LLC") filed two Chapter 11 cases in the United States Bankruptcy Court for the Southern District of California.

5. SR LLC filed its first bankruptcy case on January 4, 2010, case number 10-00046-PB (the "First Bankruptcy Case").

6. As discussed in detail below, the First Bankruptcy Case was converted to a Chapter 7 case on July 22, 2011 and the Property was abandoned by the Chapter 7 Trustee to SR LLC on September 28, 2011.

7. Prior to the conversion of the First Bankruptcy Case, the Honorable Peter W. Bowie, then the Chief Judge for the United States Bankruptcy Court for the Southern District, found that SR LLC's bankruptcy case was a Single Asset Real Estate case as defined in Title 11 of the United States Code, as amended (the "Bankruptcy Code"). Attached hereto as **Exhibit "A"** is a copy of Judge Bowie's Memorandum Decision.

8. SR LLC filed its second bankruptcy case on November 18, 2011, case number 11-18853-PB (the "Second Bankruptcy Case," together with the First Bankruptcy Case, the "Prior Bankruptcies").

9. The Second Bankruptcy Case was dismissed on February 17, 2012.

10. The Debtor has never filed a bankruptcy case. The Debtor was formed on January 21, 2012 by the former holders of the Third Deed of Trust (defined below) recorded against the Property to acquire the Property at a nonjudicial foreclosure sale on the Third Deed of Trust.

11. This bankruptcy case was filed to prevent a foreclosure by the holders of the First Deed of Trust in order to preserve value for the benefit of all creditors and interest holders. As set forth below, this bankruptcy will be far different than the Prior Bankruptcies as the Debtor intends to promptly propose a plan of reorganization that

---

[1] Multiple filings are not per se improper nor are they uncommon among the country's largest corporations. *See* for example, FAO Schwarz, Delta Airlines, Readers Digest to name only some of the well-known debtors which have filed multiple times.

preserves the significant value of the Property for all creditors.

I.   **The Property and Background**

12.   The Property is truly a unique piece of land with a variety of valuable resources. Initially acquired to be developed into residential homes and ranches along with a golf course and other commercial opportunities, SR LLC later sought to expand the potential uses of the Property. *See* Exhibit "B", SR LLC, First Amended Disclosure Statement, 10-00046-PB, Dkt. No. 164, p. 9.[2] These uses included a possible sale of a portion of the Property to a Native American Tribe for development as a casino, the construction of a sand quarry, possible oil reserves, the potential for a solar power facility, the sale of riparian and other environmental credits, liquid asphalt extraction, and residential, industrial and commercial development opportunities. *Id*. pp. 11-21.

13.   The Property straddles Santa Clara and Santa Cruz counties and is comprised of 14 parcels totaling over 6,400 acres.

14.   The Property was initially acquired by SR LLC in or around May of 2000 for the purchase price of approximately $17,000,000. Id. p. 9. SR LLC financed the acquisition through a loan arranged by First Blackhawk Financial Corporation ("Blackhawk"). The initial loan, in June of 2000, was for $15 million and was subsequently increased to $25 million in November of 2000 (the "First Loan"). Blackhawk then factionalized and sold individual interests in the First Loan to various individual investors. The First Loan was secured by a deed of trust recorded against the Property (the "First Deed of Trust"). Each holder of a individual interest in the First Loan has a corresponding individual interest in the First Deed of Trust.

15.   SR LLC borrowed an additional $15 million in November of 2000 (the "Second Loan"). The Second Loan was also arranged by Blackhawk who, again, factionalized and sold individual interests in the Second Loan to various individual

---

[2] The Debtor attaches SR LLC's First Amended Disclosure Statement <u>only</u> to provide the Court with additional background into the cases filed by SR LLC. As detailed below, this filing will be far different from the Prior Bankruptcies.

investors. The Second Loan was secured by a deed of trust recorded against the Property (the "Second Deed of Trust"). Each holder of an individual interest in the Second Loan has a corresponding individual interest in the Second Deed of Trust.

16. SR LLC then borrowed an additional $3 million in October of 2003 (the "Third Loan," together with the First Loan and the Second Loan, the "Loans"). The Third Loan was also arranged by Blackhawk who, again, fractionalized and sold individual interests in the Third Loan to various individual investors. The Third Loan was secured by a deed of trust recorded against the Property (the "Third Deed of Trust"). Each holder of an individual interest in the Third Loan has a corresponding individual interest in the Third Deed of Trust.

17. Many of the owners of the individual interests were neighbors, friends and colleagues who lived in Northern California. As a result, for many years there was a lack of note enforcement due to the lenders' general desire not to foreclose or otherwise wipe-out the interests of their neighbors, friends and colleagues.

18. After SR LLC and its then manager proved that they could not capitalize on the significant value of the Property, the holders of the Third Deed of Trust at <u>the direction of then majority of the holder of interests in the First Deed of Trust</u> commenced foreclosure on the Property in late 2009. Had the Third Deed of Trust been foreclosed, none of the lenders would have been harmed because the holders of the First Loan and the Second Loan would have retained their security interest while the holders of the Third Loan would have owned the Property. The hope of the holders of the Third Loan was to work with the holders of the First Loan and the Second Loan to find a fair and equitable way to (1) develop the Property and (2) distribute the proceeds among the holders of interest in the Loans. The foreclosure, however, was interrupted by the First Bankruptcy Case.

## II. The First Bankruptcy Case

19. Despite borrowing $43 million, SR LLC failed to develop the Property or otherwise take any action to realize value on the Property. Except for several grazing

Case: 13-54471   Doc# 5   Filed: 08/20/13   Entered: 08/20/13 16:02:45   Page 4 of 7
4811-1062-1973.1                                    4

leases and other modest activity, SR LLC never monetized the assets located within the Property.

20. As a result of the SR LLC's failure to generate any funds to repay the Loans, it filed the First Bankruptcy Case on January 4, 2010.

21. After it became clear that SR LLC would be unable to propose a viable plan, SR LLC sought to retain a Chief Restructuring Officer to oversee its reorganization.

22. Ultimately, the CRO's actions only furthered the rift between SR LLC and the holders of interests in the Loans.

23. On December 28, 2010, Judge Bowie appointed a Chapter 11 Trustee for the Debtor. The United States Trustee for the Southern District of California appointed an "off-panel" trustee, Mr. Douglas P. Wilson, a well-respected receiver, trustee and assignee and successful real estate developer. Judge Bowie approved the appointment of Mr. Wilson on January 11, 2011.

24. The Chapter 11 Trustee sought to obtain funding to allow him to analyze and report on the viability of developing the assets located on the Property. The only financing available to the Chapter 11 Trustee, however, was senior secured financing.

25. Ultimately, Judge Bowie denied the Chapter 11 Trustee's motion for a priming loan because of lack of creditor consensus. The case was converted to a case under Chapter 7.

26. The Chapter 7 Trustee, a well-respected and experienced panel trustee, Mr. Richard Kipperman, abandoned the Property to SR LLC on September 28, 2011.

### III. The Second Bankruptcy Case

27. On November 18, 2011, prior to the closure of the First Bankruptcy Case, but after the abandonment of the Property to SR LLC, SR LLC filed the Second Bankruptcy Case.

28. On February 21, 2012, the Second Bankruptcy Case was dismissed.

### IV. In Fighting Among Lenders and Foreclosure by Holders of Interests in the

**Third**

29. Since the dismissal of the Second Bankruptcy Case, the holders of the First Loan and the Second Loan have battled in various courts regarding the appointment of a servicer to replace Blackhawk, the rights of the individual lenders, and the ability of the holders of the First Loan or the Second Loan to foreclose.

30. Unlike the holders of the First Loan and the Second Loan, the holders of the Third Loan were relatively few and they were well organized. As such, the holders proceeded with a nonjudicial foreclosure of the Third Deed of Trust and the Debtor obtained title to the Property on December 3 (Santa Cruz) and December 11 (Santa Clara).

31. The holders of the First Loan subsequently obtained a rents and profits receiver over the Property who is still acting as receiver.

32. After a number of individual interests in the First Loan were acquired by a claims trader, a majority of the holders of interests in the First Deed of Trust finally emerged to support foreclosure of the Property rather than negotiation with the other creditors. A nonjudicial foreclosure sale for the First Deed of Trust is scheduled for August 21, 2013.

## V. The Debtor's Bankruptcy Case and Plan to Reorganize

33. The Debtor has determined that a bankruptcy filing for the Property will preserve the value of the Property for all parties who contributed funds for its acquisition, rather than merely for the holders of interests in the First Loan.

34. The Debtor intends to promptly propose and seek confirmation of a viable plan of reorganization that will avoid the pitfalls of the prior plans proposed by SR LLC because it will be backed by substantial funds available at confirmation. The Debtor intends to proceed on the schedule required of single asset real estate debtors if not even faster.

35. Indeed, recognizing that another bankruptcy case could be viewed as a stall tactic, the Debtor raised $350,000 to fund the retainer of the Debtor's proposed counsel,

Foley & Lardner, LLP.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 20th day of August, 2013, in Palo Alto, California.

*N I Adams*

Norman I. Adams